## STATE v. PIRKEY.

On a trial for receiving stolen horses, the prosecuting attorney stated in his argument that the ranch where accused had gotten the horses was a notorious rendezvous of horse thieves, and that accused knew that the person from whom he got the horses had just come from another ranch, which was also such a rendezvous, whereupon accused objected that there was no evidence that either of such places was a rendezvous for horse thieves, to which the court stated, "Oh, everybody knows what kind of places those are." The court charged that guilty knowledge might be found from circumstances. Held that, there being no evidence to warrant such argument, the statements of the prosecuting attorney and remark of the court were prejudicial, as the jury must have received the strongest kind of an impression that such statements were facts, and that everybody, including accused, knew that he had gotten the horses at a rendezvous of horse thieves, and that such fact was a circumstance which they might, under the court's charge, consider in determining guilty knowledge.

"Prejudicial error" is such error as in all probability must have produced some effect upon the final result.

Unwarranted and prejudicial statements of facts by the prosecuting attorney in his argument and by the court, which may have influenced the jury, cannot be disregarded as technical error merely because the evidence supports a conviction.

Corson, J., dissenting.

On petition for rehearing. Former opinion reversed, and new trial granted.

For former opinion, see 22 S. D. 550, 118 N. W. 1042.

SMITH, J. This case is before us on a petition for rehearing. The former decision of the court will be found in 22 S. D. 550, 118 N. W. 1042. The petition for rehearing presents for consideration a single proposition. A brief statement of the facts is, perhaps, necessary to a clear understanding of the question involved.

By an information filed in the circuit court of Lyman county the accused was charged with the crime of receiving stolen property, to wit, 17 head of horses, alleged to have been

stolen by William Morgan, Samuel Watkins, Edward Whiting, and David Raymond. The transaction in which the accused purchased and came into possession of the stolen property occurred at a ranch in Lyman county kept by one Joe De Marsche. It appears in evidence that Morgan had brought the horses from another ranch kept by one Dave Colombe. The evidence that the horses were stolen by Morgan and his associates was undisputed, as was the fact that the accused had received them from Morgan in exchange for two other horses and $100 in cash. It thus appears that the vital issue of fact in the case was whether the accused had purchased and received the horses from Morgan knowing them to be stolen property.

In his address to the jury the state's attorney used the following language: "That Mr. Pirkey when he went to get those horses went down to Joe De Marsche's, that noted rendezvous of horse thieves, and that he knew that Morgan and his associates had just come from Dave Colombe's place, another notorious rendezvous of horse thieves." The record discloses the following proceedings with reference to these remarks by the state's attorney: "Thereupon, the attorney for defendant immediately called the attention of the court to this statement made by the state's attorney, and objected thereto, and requested the court to direct the attorney to cease using such language, and to direct the jury not to consider such language, for the reason that there was no evidence to warrant the use of such language, or to in any manner support the same, all of which the court refused to do; and the only statement made by the court in reference thereto was as follows: 'Oh, everybody knows what kind of places those are'—to all of which the defendant thereupon duly excepted." In the former opinion of this court Judge Corson says: "It is claimed by the Attorney General that there was some evidence in the case from which the inference might properly be drawn that the places were rendezvous for criminals, and that the statement made does not therefore entitle the defendant to a reversal of the judgment. We are unable to agree with the Attorney General in this contention, and we think it doubtful, from an examination of the evidence,

if there was sufficient evidence to justify the remarks of the counsel or those of the court." A re-examination of the evidence satisfies us that this conclusion was fully justified, and that nothing appears in the evidence which would warrant the statement that the places referred to were rendezvous for horse thieves. The question decisive of the case upon this rehearing is whether, under the facts and circumstances in evidence before the jury, these statements by the prosecuting attorney and the remarks of the court in connection therewith, were prejudicial to the rights of the accused.

In effect, the attorney made an assertion to the jury that the place or ranch at which the accused received, or purchased the stolen horses was a noted and notorious rendezvous of horse thieves. The remark of the court, when his attention was called specifically to this statement by an objection of defendant's attorney, that "everybody knows what kind of places those are" could hardly have been understood by the jury as meaning anything short of an indorsement and affirmance by the court of this unwarranted assertion of the prosecuting attorney, and it seems to us could hardly fail to have conveyed to the jury a strong impression that the defendant, when he purchased the stolen property, knew he was dealing with horse thieves, and that in all probability the horses were stolen property. At the close of the argument the court instructed the jury—and correctly we think—as to the proof of facts sufficient to show guilty knowledge on the part of the accused: "It is sufficient if the facts and circumstances, or information relating to the property, or accompanying the transaction, were such as made the defendant believe the property had been stolen." A stronger circumstance hardly could be placed before the minds of the jury, tending to show guilty knowledge, than the fact that the horses were in the possession of men at places which "everybody knew" to be "notorious rendezvous of horse thieves." It seems quite clear to us that the jury, after hearing this unwarranted assertion of the state's attorney, the objection thereto by defendant's counsel, and the remark of the court in response thereto, must have received the strongest kind of an impression

that such assertions of the prosecuting attorney were facts, and that everybody, including the accused, knew that he had purchased the property at a "notorious rendezvous of horse thieves," and that this fact was one of the circumstances which, under the charge of the court, they might consider in determining the question of guilty knowledge. A more careful consideration of the question thus presented leads us to doubt the correctness of our former conclusion that the remarks of the counsel an court could not necessarily have influenced the jury in arriving at their verdict, and would therefore be mere technical error, which should be disregarded by this court.

Prejudicial error is such error as in all probability must have produced some effect upon the final result of the trial, namely, the verdict of the jury. There was a direct conflict in the evidence as to the guilty knowledge of the accused. The evidence of Morgan, who testified he stole the horses, was offered on the part of the state, and tended to show that the accused was informed, at the time he purchased the horses, that the same were stolen property. This evidence was controverted by the accused, who offered the testimony of certain persons present when the alleged conversations occurred tending to contradict Morgan's alleged conversation. · This was the only evidence, apart from the circumstances surrounding the transaction, tending to show guilty knowledge. In determining· this conflict in the evidence the jury were told they should consider "facts and circumstances relating to the property or accompanying the transaction." Thus it appears not impossible, but even probable, that the jury did consider the character and reputation of the place where the horses were purchased and of those persons who frequented it, and it does not seem improbable that the fact that it was known and considered a "notorious rendezvous of horse thieves" may have been decisive in the minds of the jury. In this view of the case it seems quite impossible for this court to "see from the record that the accused has not been prejudiced" in his substantial rights by these statements of the prosecuting attorney and the court. We believe there was sufficient evidence before the jury to sustain the verdict, and we should sustain it.

were it clear to our minds that the jury were not in any degree influenced by these improper remarks. But we are not prepared to hold that unwarranted and prejudicial assertions of facts which may have influenced the minds of jurors should be disregarded as mere technical errors in any case merely because the evidence in the record would sustain a conviction.

We are of the opinion that the former decision of this court correctly decides all other questions presented on this appeal; but, for the reasons above indicated, a new trial should be granted the accused.

CORSON, J., dissents.